**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

FILED

SEP 3 0 2022

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

SEALED

|  |  |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ROBERT VERA, JR., | |
| *Plaintiffs,* | |
| *v.* | TO BE FILED UNDER SEAL |
| ALLIED RESEARCH TECHNOLOGY, INC., *and* WILLIAM D. HATFIELD, *in his individual capacity,* | Case No. 2:22cv406 |
| *Defendants.* | |

**COMPLAINT**

Plaintiff / Relator Robert Vera, Jr. ("*Mr. Vera*" or "*Relator*") brings this action in his own name, as well as in the name of the United States of America, pursuant to the *qui tam* provisions of 31 U.S.C. § 3729 *et seq.*, and alleges as follows.

**INTRODUCTION**

1.  This case presents a cause of action against Defendants for submitting false claims to the United States to obtain a Paycheck Protection Program ("*PPP*") loan from the U.S. Small Business Administration ("*SBA*") and, later, to obtain forgiveness of that loan. PPP loans were designed to provide relief for employers for certain types of business costs, not to be a windfall for business owners.

2.  For this reason, PPP applications limited highly-compensated employees and company owners—like Defendant William D. Hatfield ("*Hatfield*")— in the amount of compensation they may use as a basis for their PPP loans. Specifically, such compensation was limited to 2.5 times the average monthly compensation received by the owner in the previous calendar year, up to $8,333.33 per month (*i.e.*, $100,000 per year). In other words,

*- 1 -*

employees and business owners who receive an annual salary in excess of $100,000 were required to calculate their salaries as $8,333.33 per month for purposes of obtaining PPP funding.

3.      Despite this clear limitation, in the spring of 2020, Hatfield obtained a PPP loan for $1,025,600 on behalf of Allied Research Technology, Inc. ("*Allied Research*"). Then, in April or May of 2020, Hatfield directed Allied Research to pay $944,000 (more than 92 percent of the money obtained from the PPP loan) directly to himself, even though it far exceeded the limit on individual compensation required for forgiveness of the PPP loan. Despite this flagrant personal windfall, Hatfield sought PPP loan forgiveness. In order to accomplish these actions, Hatfield submitted multiple false claims to the United States and / or caused false claims to be submitted to the United States by a third party.

## PARTIES

4.      Relator / Plaintiff Robert Vera, Jr. is a citizen and resident of the Commonwealth of Virginia. Mr. Vera is a former business partner of Defendant Hatfield and a former partial owner of Defendant Allied Research. Relator's business relationship with Hatfield (and his corporate ownership interest) ended contemporaneously with Defendant Hatfield's fraud, as alleged herein.

5.      Relator is the original source of the information in this Complaint and has direct and independent knowledge of the allegations made here. Prior to filing this Complaint, Relator fulfilled all requirements of 31 U.S.C. § 3730(b)(2).

6.      Defendant Allied Research is a Virginia corporation with its primary place of business in Virginia. The corporation is registered as a small business corporation and was founded by Defendant Hatfield in 1993. The company does various types of work for the United

States Navy, most of which occurs at the BAE Systems Norfolk Ship Repair Yard located in Norfolk, Virginia.

7.     Defendant Hatfield is a citizen and resident of the Commonwealth of Virginia. Hatfield is the primary owner of Defendant Allied Research. At all times relevant to the claims set forth in this Complaint, Hatfield had power and authority over every aspect of Allied Research's business, including the power to submit claims to the United States for payment and to bind the corporation with his signature. At all times relevant to the claims set forth in this Complaint, Hatfield also had power and authority to obtain financing in the name of Allied Research, to execute any necessary documents to obtain financing, and to obtain loans like the PPP loan received in the spring of 2020.

### JURISDICTION AND VENUE

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 31 U.S.C. § 3732 (specifically conferring jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729, 3730).

9.     This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a). Defendants conduct or have conducted business within the Eastern District of Virginia and maintain offices and employees within the Eastern District of Virginia.

10.   Venue is proper in the United States District Court for the Eastern District of Virginia pursuant to 31 U.S.C. § 3732(a), because Defendants can be found in and conduct business in this district. At all times relevant to the claims set forth in this Complaint, Defendants have maintained offices and / or employees within this district, and the majority of their work was performed in Norfolk, Virginia.

## ALLEGATIONS COMMON TO ALL COUNTS

11.  In March 2020, the United States Congress passed the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) (the "*CARES Act*").

12.  Among other objectives, the CARES Act made government-guaranteed loans available to qualified small businesses through the Paycheck Protection Program ("*PPP*").  PPP loans were specifically designed to enable small businesses to continue to pay wages and salaries to their employees during the pandemic and anticipated economic downturn.

13.  The PPP allowed qualifying businesses (and other organizations) to receive unsecured loans at an interest rate of 1%.  PPP loan proceeds were only to be used by businesses for certain specific categories of costs according to certain fixed percentages.

14.  The PPP also allowed the interest and principal of the loans to be forgiven only if businesses used the loan proceeds on these specific expenses within a certain period of time.

15.  The PPP was implemented under section 7(a) of the Small Business Act, 15 U.S.C. § 636, and was administered by the SBA.  *See* BUSINESS LOAN PROGRAM TEMPORARY CHANGES; PAYCHECK PROTECTION PROGRAM, 85 Fed. Reg. 20,811 (April 15, 2020).

16.  To qualify for a loan under the PPP, each applicant was required to meet certain criteria including, among others, that it was in operation on February 15, 2020, and that it had either employees for whom it paid salaries and payroll taxes or independent contractors to whom it made payments reported on a Form 1099-MISC.

17.  The amount of the loan that could be obtained under the PPP and its implementing regulations typically depended on the applicant's historical payroll costs, consisting of compensation to its employees, and other specific costs.

18.     The proceeds of a PPP loan could be used only for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, mortgage interest payments (but not mortgage prepayments or principal payments), rent payments, utility payments, interest payments on debt obligations that were incurred before February 15, 2020, or payments made for the purpose of refinancing certain specified SBA loans.

19.     Although the PPP was overseen by the SBA, individual PPP loans were issued by private approved lenders, who received and processed PPP applications and supporting documentation, and then made loans using the lenders' own funds, which were guaranteed by the SBA.

20.     The PPP provided that up to the full amount of each PPP loan could be forgiven if the associated funds were spent on the specific eligible purposes described above over an 8-week to 24-week covered period after the loan was issued.

21.     However, PPP loan forgiveness was not intended to create a windfall for individuals, so SBA capped the annual individual compensation that could be used to calculate each business's monthly payroll costs.

22.     Specifically, employees paid more than $100,000 per year could not include their full salaries in the calculation of the PPP loan amount; instead, the highest annual compensation that could be used to calculate the PPP loan amount was $100,000.

23.     SBA placed a similar cap on the compensation that business owners could receive from of the PPP loan. According to PPP Loan Forgiveness Application Form 3508EZ ("*SBA Form 3508EZ*") and that form's instructions, each individual business owner's compensation amount was capped at

        a.      $20,833 (the 2.5-month equivalent of $100,000 per year), or

b.      the 2.5-month equivalent of the individual's applicable compensation in the year that was used to calculate the loan amount (2019 or 2020), whichever was lower.

24.     To obtain forgiveness of the loan, borrowers who obtained loans greater than $150,000—including Defendants—were required to submit SBA Form 3508EZ, which required the borrower to certify compliance with all requirements of the PPP.

25.     Borrows did not submit Form 3508EZ directly to the federal government; instead, they submitted their forgiveness applications to their respective lending institutions, which then evaluated the application and either approved or denied it.

26.     If a lender determined that a borrower was entitled to loan forgiveness, it simply notified the United States of that decision and was then reimbursed by the United States for the amount of the loan, as well as interest and various other administrative charges that the Government agreed to pay.

## COUNT ONE
### VIOLATION OF 31 U.S.C. § 3729(A)(1)(A)
Submitting or Causing to be Submitted
False Claims to the United States
(Against Both Defendants)

27.     All previous allegations are reincorporated herein.

28.     In March 2020, after Congress passed the CARES Act, Hatfield told Relator that he intended to apply for a PPP loan.

29.     Relator advised Hatfield that Allied Research was not going to experience any loss because all the company's contracts were fully funded.

30.     Specifically, Relator reminded Hatfield that because Allied Research's work involved refurbishing Navy ships so that they could return to service, the company's work would be considered "essential" and would continue.

31. Hatfield told Relator he agreed that all Allied Research employees would continue to work full time and that the business would not be forced to close or lay off any employees; however, Hatfield then told Relator that he still intended to seek the PPP loan because it would ultimately be forgiven and would therefore be "pure profit."

32. Hatfield also told Relator that the money from the PPP loan would be split between the two of them as the business owners according to their interest in the business.

33. Relator unequivocally told Hatfield that he did not want to be involved with this "pure profit" scheme and that he would not accept any money from the PPP loan.

34. Relator told Hatfield that for the PPP loan to be forgiven by the United States, Hatfield would need to submit proof to the SBA that the money had been used only for certain specific purposes, and that generating a "pure profit" windfall for business owners was not an authorized use of PPP funds.

35. In April 2020, Hatfield obtained a PPP loan in the amount of $1,025,600.

36. The loan was obtained through Truist Bank (or its predecessor, BB&T) and was assigned Loan Number 3358237100.

37. Because all employees of Allied Research continued to work at full capacity, just as Relator predicted, the business did not require any of this $1,025,600 in PPP funds in order to cover its payroll costs or other allowable expenses as defined by PPP eligibility requirements.

38. In April or May 2020 (a few weeks after he obtained the PPP funds), Hatfield paid himself a distribution of $944,000—more than 92% of the money he obtained from the PPP loan—on behalf of Allied Research.

39. Relator's employment with Allied Research terminated in May 2020.

40.   At some point after receiving the PPP loan, Defendants applied for and obtained forgiveness of the PPP loan, such that it did not need to be repaid.

41.   Defendants were required to use Form 3508EZ to obtain forgiveness of the loan. That form requires multiple signatures as well as an "Authorized Representative of the Borrower" to initial several specific representations about the business's use of the PPP funds.

42.   Form 3508EZ states that PPP loans were eligible to be fully forgiven only if at least 60% of the money was spent on employee payroll. As of December 2020, the other 40% of the funds could be used on the following:

a.   qualifying mortgage interest or rent obligations;

b.   utility costs;

c.   operations costs such as business and accounting software;

d.   property damage such as destruction from civil unrest that was not insured;

e.   supplier costs on essential goods; and

f.   worker protection expenditures such as personal protective equipment (PPE) and sneeze-guards.

43.   Defendants did not meet this requirement because more than 92% of the PPP money was paid directly to Hatfield in a distribution. Despite this obvious falsehood, Hatfield or another Allied Research employee acting at his direction signed the Form 3508EZ and submitted it to their lender, who in turn approved the application and submitted a claim to the United States for reimbursement of the $1,025,600 (plus interest and other administrative fees).

44.    Page 2 of Form 3508EZ also contained the following unequivocal statement (among

others):

> By Signing Below, You Make the Following Representations and
> Certifications on Behalf of the Borrower:
>
> The dollar amount for which forgiveness is requested (which does
> not exceed the principal amount of the PPP loan):
>
> - was used to pay business costs that are eligible for
>   forgiveness (payroll costs to retain employees; business
>   mortgage interest payments; business rent or lease
>   payments; business utility payments;
>
> - covered operations expenditures; covered property damage
>   costs; covered supplier costs; or covered worker protection
>   expenditures); includes payroll costs equal to at least 60% of
>   the forgiveness amount; and
>
> - for any owner-employee (with an ownership stake of 5% or
>   more) or self-employed individual/general partner, does not
>   exceed 2.5 months' worth of compensation received during
>   the year used to calculate the PPP loan amount, capped at
>   $20,833 per individual in total across all businesses.

45.    Hatfield, or another Allied Research employee acting at his direction, initialed the box with

the above statement, even though the statement was false.   At the time this representation

was made, Hatfield knew that it was false.

46.    The next box on Form 3508EZ requires initials next to this statement:

> I understand that if the funds were knowingly used for unauthorized
> purposes, the federal government may pursue recovery of loan
> amounts and/or civil or criminal fraud charges.

47.    Hatfield, or another Allied Research employee acting at his direction, also initialed this

box, even though they knew that most (or all) of the PPP funds had been used for

unauthorized purposes and therefore that criminal penalties could attach to their false

representations.   Accordingly, Defendants were aware of the illegality of their actions.

48.    The last box on Form 3508EZ requires the company to initial the following statement:

> The Borrower has accurately verified the payments for the eligible
> payroll and nonpayroll costs for which the Borrower is requesting
> forgiveness.

49.     Hatfield, or another Allied Research employee acting at his direction, also placed their

initials in this box, even though the representation was false.  No one could have verified

the payment of eligible costs because the PPP money was not used to pay eligible costs.

50.     SBA required PPP lenders, like Truist, to verify that all these boxes on each forgiveness

application were initialed before granting the application.  Therefore, the representations

contained in these three statements were material to Truist's decision to approve or deny

the application.

51.     After Truist approved the forgiveness application containing these false statements, Truist

then sought reimbursement from the United States for the PPP loan provided to defendants.

52.     On page 3 of Form 3508EZ, Hatfield, or another Allied Research employee acting at his

direction, was required to initial the following statement:

> The information provided in this application and the information
> provided in all supporting documents and forms is true and correct
> in all material respects.  I understand that knowingly making a false
> statement to obtain forgiveness of an SBA-guaranteed loan is
> punishable under the law, including 18 U.S.C. 1001 and 3571 by
> imprisonment of not more than five years and/or a fine of up to
> $250,000; under 15 U.S.C. 645 by imprisonment of not more than
> two years and/or a fine of not more than $5,000; and, if submitted to
> a  Federally  insured  institution,  under  18 U.S.C. 1014  by
> imprisonment of not more than thirty years and / or a fine of not
> more than $1,000,000.

53.     Hatfield, or another Allied Research employee acting at his direction, also initialed this

statement, even though they knew that they had made numerous false statements and

representations in completing the Form 3508EZ.

54.   The instructions that accompany Form 3508EZ require applicants to maintain all records and other information related to the loans for six years; this requirement is important because it allows the United States to verify dispositive information.

55.   As described in this count, Defendants submitted a Form 3508EZ that was knowingly false, because Defendants knew that they had not met the requirements to obtain forgiveness of the loan as specifically articulated in the text of the form.

56.   Hatfield, or another Allied Research employee acting at his direction, executed a Form 3508EZ containing the material misrepresentations described herein.

57.   The entire Form 3508EZ submitted to the United States (via Truist) was false, and Defendants' misrepresentations proximately caused the United States to improperly forgive the loan.

58.   Because of Defendants' false statements, Truist sought reimbursement from the United States for the PPP loan provided to Defendants, plus interest and other administrative fees.

59.   Defendants submitted these false claims directly to Truist, an SBA-approved lender, who then relied on these false claims to a claim for the amount of the loan to the United States via SBA.

60.   Therefore, Defendants knowingly submitted false claims to the United States and knowingly caused to false claims to be submitted to the United States.

61.   As a result of Defendants' false statements and claims, the United States has been damaged in an amount to be proved at trial.

**COUNT TWO**
**VIOLATION OF 31 U.S.C. § 3720(A)(1)(B)**
Making and Using a False Statement
or Record Material to a False Claim
(Against Both Defendants)

62. All previous allegations are reincorporated.

63. As alleged above, Defendants made false records and statements material to their false claims including, but not limited to, those made on Form 3508EZ.

64. Defendants' Form 3508EZ was itself a false statement or record because it contained numerous false representations and certifications.

65. The false representations and certifications on Defendants' Form 3508EZ were material because without those false representations and certifications, the application for forgiveness would not have been approved by Truist.

66. In addition, Form 3508EZ required Defendants to submit and / or maintain various supporting records and documents related to Form 3508EZ. The United States requires that these records be maintained for a period of at least six years so that it may audit the records if necessary.

67. For example, Defendants were required to maintain all records showing that at least 60% of the loan proceeds were used for payroll and that 40% of the proceeds were used for various other specified purposes.

68. Maintenance of these records in a truthful state is also a material part of the forgiveness application.

69. In addition to Form 3508EZ, defendants made and used various false statements and records to support their false claims and statements; the records Defendants submitted with their Form 3508EZ were false.

70.   As a result of these allegations, the United States has been damaged in an amount to be proved at trial.

**COUNT THREE**
**VIOLATION OF 31 U.S.C. § 3729(A)(1)(G)**
Making and Using a False Record or Statement Material to
an Obligation to Pay or Transmit Money to the United States
(Against Both Defendants)

71.   All previous allegations are reincorporated.

72.   Before defendants obtained the PPP loan, Hatfield knew that it would be illegal for him to treat the PPP loan as "pure profit," as he told Relator he planned to do.

73.   Defendants acted in reckless disregard of the truth or falsity of the representations that they made on their Form 3508EZ.

74.   At the time Hatfield took the distribution of $944,000, he knew he was being paid money to which he was not entitled, because he knew all along that he intended to take the money himself as "pure profit."

75.   However, even if Defendants did not initially plan to take the money as "pure profit," and even if Defendants had applied for the PPP loan out of an abundance of caution, they always had the option of repaying the money to the United States via Truist Bank. As part of the PPP, Defendants would have been able to repay the $1.03M at generous terms once they realized it would not be needed.

76.   After Hatfield took the $944,000 distribution, he was not in compliance with the PPP requirements, and he was no longer entitled to have the loan forgiven. Therefore, he was under an affirmative obligation to repay the money to the government.

77.   Form 3508EZ and its signatures were therefore material to Defendants' obligation to repay the PPP loan.

78. Instead of repaying the PPP funds, Hatfield (and Allied Research) paid themselves the money and then created and submitted numerous false claims to avoid repayment.

79. When Hatfield took the distribution of $944,000, he was left with no option other than to make false records or statements because if he had told the truth about what Allied Research did with the money, the PPP loan would not have been forgiven.

80. Form 3508EZ was material to Defendants' obligation to repay money to the United States and / or to its intermediary.

81. Hatfield and the company made numerous false records or statements to avoid repaying the PPP loan to Truist Bank.  The false records and statements made by defendants were material and include, but are not limited to, the Form 3508EZ, as well as the numerous records and other information related to the claim.

82. The instructions that accompany Form 3508EZ required Defendants to maintain all records and other information related to the loans for six years.

83. Those records constitute an important part of the claim, and all such records maintained by defendants are false.

84. As a result, the United States has been damaged in an amount to be proved at trial.

Therefore, Relator demands (1) that the United States be awarded three times the damages sustained because of the violations alleged herein in an amount to be proved at trial, as provided by the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*; (2) that the maximum civil penalty under the federal False Claims Act be imposed for each and every false claim proved at trial; (3) that pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in prosecuting this case; and (4) that Relator be awarded

the maximum Relator's share possible under the federal False Claims Act.  In addition, Relator

requests any alternative or supplemental relief the court may deem appropriate.

        Relator demands a trial by jury.

                                        Respectfully Submitted through Counsel:

Zachary A. Kitts
Virginia Bar # 47052
Counsel for Relator
K&G Law Group, PLLC
3554 Chain Bridge Road, Suite 100
Fairfax, Virginia 22030
Phone: 703-649-5500
Fax: 703-649-6363
Email:  zkitts@kglawpllc.com

Mark A. Jones
North Carolina Bar # 36215
Counsel for Relator
BELL, DAVIS & PITT, P.A.
100 N. Cherry St. Suite 600
Winston-Salem, NC 27101
Phone:  (336) 714-4122
Fax:  (336) 714-4101
Email:  mjones@belldavispitt.com

(Not Admitted in Virginia; Admission Pro
Hac Vice Pending)